IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:20-CV-127-RJ

GLENWOOD S. WHITE,

    Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-16, -18] pursuant to Fed. R. Civ. P. 12(c). Claimant Glenwood S. White ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on December 10, 2018, alleging disability beginning February 11, 2015. (R. 15, 200–06). His claim was denied initially and upon reconsideration. (R. 15, 115–48). A hearing before the Administrative Law Judge ("ALJ") was held on December 13, 2019, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 15, 34–57). Also on December 13, 2019,

Claimant amended his alleged onset date to November 14, 2018. (R. 15, 276–77). On February 12, 2020, the ALJ issued a decision denying Claimant's request for benefits. (R. 12–33). On April 20, 2020, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred in: (1) weighing the medical opinions of Dr. Semaan El-Khoury and Dr. Jennifer Schnitzer, and (2) failing to incorporate the state agency consultants' medical opinions into the RFC. Pl.'s Mem. [DE-17] at 11–25.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since November 14, 2018, the amended alleged onset date. (R. 17). Next, the ALJ determined Claimant had the following severe impairments: left shoulder injury with surgical repairs, history of mild left upper extremity plexopathy with evidence of reinnervation, carpal tunnel syndrome, osteoarthritis, obesity, adjustment disorder, major depression, and PTSD. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–19). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself and a moderate limitation in interacting with others. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] requiring the following limitations:

> He can occasionally lift and carry 20 pounds, and he can frequently lift and carry 10 pounds. He can sit for about six hours in an eight-hour workday. He can stand and walk in combination for six hours during an eight-hour workday. He can frequently push and pull with the upper extremities, but no additional limitation for pushing and pulling with the lower extremities. He can frequently kneel and crouch. He can frequently handle and occasionally reach overhead with the left upper extremity. He can have occasional interactions with coworkers and supervisors. Interaction with the public should not be an essential element of the work.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

(R. 19–26). In making this assessment, the ALJ found that Claimant's statements about his limitations were inconsistent with the medical evidence of record. (R. 20–21).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a police officer, deputy, or corrections officer. (R. 26–27). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 27–28).

## V. DISCUSSION

### A.   The ALJ did not err in weighing the medical opinions.

Claimant contends the ALJ erred in weighing the medical opinions of Dr. El-Khoury and Dr. Schnitzer. Pl.'s Mem. [DE-17] at 11–22. Because Claimant protectively filed his application on December 10, 2018, 20 C.F.R. § 404.1520c, which applies to claims filed on or after March 27, 2017, governs how the ALJ considers the medical opinions in Claimant's case. That regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the

5

treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c)(1)–(5). The regulations require the ALJ to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* § 404.1520c(b). However, when a medical source provides multiple opinions, the ALJ may use a single analysis to evaluate all the opinions from a single source, and the ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

### 1. Dr. El-Khoury

On November 26, 2019, Dr. El-Khoury completed a medical evaluation report. (R. 873–77). Dr. El-Khoury wrote that Claimant's impairments include: "sleep apnea, depression, hypertension, BPH insomnia, hypokalemia, osteoarthritis, chronic knee pain, left shoulder, hyperlipidemia pain, PTSD, anxiety, adjustment disorder, bilateral carpal tunnel, multiple joint pain, renal insufficiency, chronic kidney disease, back pain, hypercholesterolemia, hearing loss." (R. 873). Dr. El-Khoury opined that Claimant's pain and/or fatigue would affect his concentration, memory, and ability to focus and stay on task thirty-three percent of a workday and that Claimant would be off task more than one hour total during a workday. *Id.* Dr. El-Khoury checked a box indicating that Claimant required bedrest for pain or fatigue such that he could not report for work periodically, and when asked how often it would occur, he wrote "daily." *Id.* Dr. El-Khoury indicated that Claimant would not be able to work full time at any level of exertion; he could sit, stand, or walk for two hours in an eight-hour workday; he could lift and carry up to ten pounds

6

occasionally and never lift or carry more than ten pounds; he could not grasp, push, or pull arm controls; he could not use his feet for pushing and pulling of leg controls; he could not work around unprotected heights, moving machinery, changes in temperature and humidity, or exposure to dust, fumes, and gasses; he had a moderate restriction on driving automotive equipment; he was markedly limited in the ability to remember locations and work-like procedures and the ability to understand, remember, and execute very short and simple instructions but had no evidence of limitation in the ability to understand, remember, and execute detailed instructions; he was markedly limited in the ability to sustain concentration and persistence; and he had no evidence of limitation in social interaction and adaptation. (R. 874–78). In an additional comments field, Dr. El-Khoury wrote: "Total occupational and social impairment." (R. 878).

In discussing Dr. El-Khoury's opinion of Claimant's mental impairments, the ALJ found:

> This opinion is not persuasive because it is inconsistent with Dr. El-Khoury's treatment notes that show normal mental status examinations, (Exs. B5F, B9F, B12F/1). Additionally, this opinion is inconsistent with and is not supported by the normal mental status exams that other clinicians noted. See Exs. B3F/25, B6F/11, 22, B10F/14, B18F/43. Dr. El-Khoury's opinion is inconsistent with the minimal and conservative course of treatment for mental impairments. See Exs. B6F/22, B10F/14, B15F/15. Finally, Dr. El-Khoury's opinion is inconsistent with the notes from a recent encounter with a licensed clinical social worker. At that appointment, the claimant reported that his mood was good, and his affect was euthymic. The claimant's thoughts were logical and goal directed. His attention was normal. His insight and judgment were intact. The claimant was not interested in talk therapy. See Ex. B18F/43.

(R. 25–26). Regarding Dr. El-Khoury's opinion of Claimant's physical impairments, the ALJ wrote:

> These opinions are not persuasive because they are inconsistent with Dr. El-Khoury's treatment notes that show that the claimant walked normally, had normal motor strength and tone, had normal physical exams and had normal mental status exams. Dr. El-Khoury described the claimant's physical exams as "benign" or "stable." See Exs. B5F, B9F, B12F/1. Dr. El-Khoury's opinions are inconsistent with and are not supported by the clinical exams, objective imaging studies and

7

record of treatment. See Exs. B1F/1, B3F/25, B5F, B6F/11, B7F/73, 78, B9F, B10F/31, B12F/1, B14F, B15F/37, B16F.

(R. 26).

The ALJ's citations to the record show the following. On July 23, 2018, Claimant reported that he had interviewed for two jobs and that he has good days and bad days. (R. 721). He wore braces on his knees and wrists and said that physical therapy was depressing because he did not feel better when he left. *Id.* He reported that he was looking forward to moving somewhere "where there is more life and activity," and it was noted that his spirits were good. *Id.*

At a physical therapy session on August 24, 2018, Claimant had normal gait and full range of motion in his neck and shoulders; he was "consistent with physical therapy and noting improvement." (R. 716). On September 4, 2018, Sherman Blystone, a physical therapist, wrote that Claimant "continues to rate his pain very high and his functional ability very low which is inconsistent with what I'm saying [sic]. He has functional range of motion and strength." (R. 346). Claimant rated himself with low scores, and Mr. Blystone wrote that Claimant's assessment was "inconsistent with what I observed in the clinic. He is functioning at a much higher level and able to do a complete rehabilitation program without any significant issues." (R. 347).

On November 6, 2018, Dr. Craig Toxey saw Claimant for a routine follow-up. He noted that Claimant reported blurry vision, "some stiffness and soreness in his left shoulder," and chronic knee pain for which Claimant "[f]eels satisfied with knee braces and voltaren." (R. 454). Claimant was alert and oriented with a normal affect. (R. 456).

On January 10, 2019, Dr. El-Khoury examined Claimant and found that he had an active and alert mental status, normal motor strength and tone, normal movement of all extremities, and a normal gait. (R. 598). Dr. El-Khoury wrote: "clinically ok vitals and exam benign." *Id.*

8

On January 30, 2019, Dr. Willis noted that Claimant was wearing bilateral wrist splints and had depression and sleep problems. (R. 624). He was pleasant, cooperative, alert, and oriented x3 with normal speech, good eye contact, well-organized thoughts, euthymic mood with full range of affect, and intact insight and judgment. *Id.*

On February 6, 2019, Claimant reported weakness in his shoulders, particularly when lifting overhead. (R. 613). Dr. Toxey wrote that Claimant's MRI was "stable." (R. 615). He noted that Claimant used knee braces and wrist splints and that Claimant should follow up with his orthopedist for his shoulder pain. *Id.*

On April 9, 2019, Claimant visited the emergency department for a cough and neck pain. (R. 773). He was instructed to follow up with his primary care provider. *Id.* On April 11, 2019, Dr. Jenny Willis noted that Claimant reported nightmares, depression, anxiety, and sleep problems. (R. 755). He was wearing bilateral wrist splints, and Dr. Willis noted that Claimant was "pleasant, cooperative, alert, oriented x3" with coherent speech, good eye contact, and organized thoughts. *Id.* Claimant's mood was "ok in office with full range of affect," and his insight and judgment were not impaired. *Id.*

On April 16, 2019, Dr. El-Khoury found again that Claimant had an active and alert mental status, normal motor strength and tone, normal movement of all extremities, and normal gait. (R. 737). Dr. El-Khoury wrote: "as above doing ok, bronchitis better, exam ok, some dizziness likely vertigo, use otc rx, vitals ok loose [sic] wt." (R. 737).

On July 17, 2019, Claimant reported dysuria, groin pain, and hand pain. (R. 862). Claimant had equal grip strength and no swelling in his hands; he stated that he lost his hand braces during a move and needed replacements. (R. 863).

On July 30, 2019, approximately four months before his opinion that Claimant had a total

9

occupational and social impairment, Dr. El-Khoury again found an active and alert mental status, normal motor strength and tone, normal movement of all extremities, and normal gait. (R. 806–07). Dr. El-Khoury wrote that the exam was "stable" and that Claimant would benefit from knee braces. (R. 807). On September 17, 2019, Claimant expressed frustration with his lack of orthopedic care, and it was noted that the VA had not yet authorized it. (R. 840).

On October 17, 2019, Claimant was noted to be alert and oriented x4, calm, and engaging with unremarkable speech, good mood, euthymic affect, logical and goal oriented thoughts, appropriate attention, and intact judgment and insight. (R. 921). He reported no interest in talk therapy. (R. 922).

On October 23, 2019, MRIs of Claimant's knees showed severe patellofemoral chondromalacia, mild weight-bearing chondromalacia, mild medial meniscal degeneration, patellar maltracking, severe chondromalacia at the lateral aspect of the joint, and other signs of degenerative joint disease. (R. 823–25). On October 31, 2019, Dr. Freela Douglas wrote that there was no indication Claimant needed surgery, and Claimant reported that he wanted to continue therapy and working on his weight loss. (R. 867). He was assessed with osteoarthritis of the knees. (R. 867–72).

Claimant contends that Dr. El-Khoury's opinion is consistent with the record, contrary to the ALJ's conclusion otherwise. Pl.'s Mem. [DE-17] at 14–16. Nonetheless, upon reviewing the evidence cited by the ALJ, the court can trace the ALJ's reasoning, and her determination is supported by substantial evidence. Dr. El-Khoury opined that Claimant would not be able to work at any level of exertion and that he had a "[t]otal occupational and social impairment." (R. 878). However, as the ALJ discussed, the record contains numerous examinations that were normal. Accordingly, the ALJ did not err in discussing Dr. El-Khoury's opinion.

## 2. Dr. Schnitzer

On May 24, 2019, Dr. Schnitzer completed a psychological evaluation of Claimant. (R. 801). Her diagnostic impression was "major depressive disorder, recurrent, moderate." (R. 802). She wrote:

> The effects of his Major Depressive Disorder have affected his work productivity as well as his quality of his relationships in the familial environment. The Major Depressive Disorder causes social and occupational impairment due to chronic sleep impairment, emotional disregulation [sic], poor concentration, isolation behaviors, poor behavioral controls, loss of interest in life and detachment reactions.
>
> At present day I do not feel he is able to work in a physical or sedentary job due to the following issues:
>
> Individual has difficulty attending to or is easily distracted from the task at hand.
>
> Individual has difficulty maintaining concentration and focus on work over a period of time, tends to skip from one task to another without completing the prior task.
>
> Individual has intrusive thoughts which interfere with the ability to stay focused on the task at hand.
>
> Individual has significant difficulty remembering instructions and details of work assignments.
>
> Individual's sleep is so disrupted that he is usually fatigued at work, making concentration[] and focus on work assignments difficult.
>
> Individual is so depressed that he has difficulty sustaining energy and motivation to complete assignments at work.
>
> At this time there is no likelihood of improvement to his MDD in the future.

(R. 802–03). The ALJ discussed Dr. Schnitzer's opinion as follows:

> This opinion is not persuasive because this onetime assessment is inconsistent with and is not supported by the longitudinal record of treatment for mental impairments. See Exs. B6F/22, B10F/14, B15F/15. Dr. Schnitzer's statement that he could not work is inconsistent with her objective findings, namely normal speech, appropriate eye contact, and intact thought content and processing. Finally, Dr. Schnitzer's opinion is inconsistent with the notes from a recent meeting with a licensed clinical social work[er] when the claimant reported a good mood, and his affect was

11

euthymic. The claimant declined a referral to talk therapy. See Ex. B18F/43.

(R. 25).

The records cited by the ALJ show the following. On January 30, 2019, Claimant reported depression, anxiety, and sleep problems. (R. 624). He was noted to be "pleasant, cooperative, alert, [and] oriented x3" with normal speech, good eye contact, well-organized thoughts, euthymic mood, full range of affect, and unimpaired insight and judgment. *Id.* On April 11, 2019, Claimant reported nightmares, depression, anxiety, and difficulty sleeping. (R. 755–56). Again, he was noted to be pleasant, cooperative, alert, and oriented x3. (R. 756). He had normal speech, good eye contact, organized thoughts, "ok" mood, full range of affect, and unimpaired insight and judgment. *Id.* On September 20, 2019, Claimant reported that he was frustrated with his lack of orthopedic care, and he was told that the VA had not yet authorized it. (R. 840). On October 17, 2019, Claimant reported that he believed he was depressed because he was not receiving the care he needed, and it took him a long time to get a brace. (R. 921). He was diagnosed with PTSD by report and stated that he was not interested in talk therapy. *Id.*

The court can trace the ALJ's reasoning in concluding that those records are inconsistent with Dr. Schnitzer's opinion that Claimant cannot work. The record shows that Claimant was consistently alert and oriented with normal speech and eye contact, organized thoughts, good mood, full range of affect, and unimpaired judgment. Accordingly, the ALJ's determination is supported by substantial evidence, and she did not err in discussing Dr. Schnitzer's opinion.

**B.     The ALJ did not err in discussing the state agency consultants' opinions.**

Claimant contends the ALJ failed to properly incorporate the state agency consultants' medical opinions into the RFC. Pl.'s Mem. [DE-17] at 22–25.

On February 22, 2019, state agency consultant Dr. Keith Noles completed a mental RFC

assessment. (R. 125–26). Dr. Noles concluded that Claimant had sustained concentration and persistence limitations, including moderate limitations in the ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, and complete a normal workday without interruptions at a consistent pace without an unreasonable number of rest periods. (R. 126). Dr. Noles wrote that Claimant's "PTSD and depression/anxiety combined cause lapses in task focus and minor inefficiency in carrying out sequential or scheduled activities." *Id.* Dr. Noles further found that Claimant was moderately limited in the ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers without distracting them or exhibiting behavioral extremes. *Id.* Dr. Noles opined that Claimant can perform simple, routine, repetitive tasks. (R. 127).

On May 8, 2019, state agency consultant Dr. Frank Gonzales completed a mental RFC assessment. (R. 142). Dr. Gonzales found that Claimant was moderately limited in the ability to understand and remembered detailed instructions and that he could manage simple, routine tasks. (R. 143). Dr. Gonzales also found that Claimant had sustained concentration and persistence limitations, including moderate limitations in the ability to maintain attention and concentration for extended periods, work in coordination with or in close proximity to others, and complete a normal workday without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. *Id.* Dr. Gonzales wrote that Claimant's "PTSD and depression/anxiety combined cause lapses in task focus and minor inefficiency in carrying out sequential or scheduled activities." *Id.* Dr. Gonzales opined that Claimant was moderately limited in the ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with

coworkers or peers. (R. 144). Finally, Dr. Gonzales found that Claimant was moderately limited in the ability to respond appropriately to changes in the work setting. *Id.*

While Dr. Noles and Dr. Gonzales opined that Claimant was moderately limited in several areas, the ALJ found that Claimant's mental impairments have resulted in mild limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself and a moderate limitation in interacting with others. (R. 19, 125–26, 143–44). The ALJ explained that Claimant has only a mild limitation in understanding, remembering, or applying information because at medical encounters, he had no difficulty following one and two-step instructions and he had no difficulty describing his work history. (R. 18–19). The ALJ found that Claimant has only a mild limitation in concentrating, persisting, or maintaining pace because while Claimant reported that his girlfriend assists him with his medications, he manages his medical, legal, and financial affairs himself; there is no evidence he had any difficulty describing his symptoms and limitations; and he drives. (R. 19). The ALJ further explained that Claimant has only a mild limitation in adapting or managing himself because he was appropriately groomed and dressed at medical encounters and "[m]ost of the mental status exams were essentially normal." *Id.* The ALJ limited Claimant to occasional interactions with coworkers and supervisors and stated that interaction with the public should not be an essential element of the work. (R. 20). The ALJ found that Dr. Noles's and Dr. Gonzales's opinions "are persuasive because they are consistent with and supported by the minimal and conservative record of treatment for mental impairments." (R. 24–25).

Claimant contends that although the ALJ found the opinions persuasive, she did not incorporate their limitations into the RFC and erroneously failed to explain why they were omitted. Pl.'s Mem. [DE-17] at 24–25. However, even when an ALJ gives significant weight to a medical

14

opinion, "an ALJ is not bound to accept or adopt all the limitations set forth therein." *Morgan v. Colvin*, No. 5:15-CV-266-D, 2016 WL 4217822, at *5 (E.D.N.C. July 21, 2016) (collecting cases), *adopted by* 2016 WL 4218333 (E.D.N.C. Aug. 9, 2016); *see also Eddie v. Berryhill*, No. 5:16-CV-801-D, 2017 WL 4002147, at *4 (E.D.N.C. Aug. 24, 2017) ("the ALJ was not required to adopt fully the limitations suggested by Dr. Wilson's opinion because he assigned it great weight"), *adopted by* 2017 WL 3995813 (E.D.N.C. Sept. 11, 2017); *Gallion v. Berryhill*, No. 5:16-CV-00312-FL, 2017 WL 3431915, at *5 (E.D.N.C. July 26, 2017); *Bundy v. Colvin*, No. 5:14-CV-55-FL, 2015 WL 450915, at *5 (E.D.N.C. Feb. 3, 2015). Here, the ALJ found mild limitations in several areas where Dr. Noles and Dr. Gonzales found moderate limitations. The ALJ's failure to adopt *all* of the limitations in the opinions, e.g., a limitation to account for a moderate limitation in concentrating, persisting, or maintaining pace, does not leave the court unable to trace the ALJ's reasoning in discussing those opinions or in formulating the RFC. The ALJ was not required to adopt the opinions wholesale, *Morgan*, No. 2016 WL 4217822, at *5, and because the ALJ thoroughly discussed Claimant's mental health treatment and noted that it was minimal and conservative, the ALJ did not fail to build an accurate and logical bridge from the evidence to her finding that greater restrictions were not warranted in her formulation of the RFC.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-16] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-18] is ALLOWED, and Defendant's final decision is affirmed.

So ordered, this the 13th day of July, 2021.

Robert B. Jones, Jr.
United States Magistrate Judge